## CHAMLEE *v.* ALVERSON *et al.*

Where a bond was conditioned to execute good and sufficient title to realty described as fronting 55 feet on a named street, upon the payment of the specified purchase-price, and before paying the purchase-price the obligees transferred the bond and the transferee in turn sold the land as containing 55 feet, at so much per front foot, and his purchaser, on measuring the land, found that it contained only 53.9 feet; and where the transferee sued the transferors of the bond, to recover the value of the deficiency, based upon the contract price per front foot at which they sold the land to him, it was not error to sustain a demurrer to the petition. In such case the contract of sale was consummated by the formal transfer of the bond for title, and the sale became fully executed and was merged into the transfer.

August 18, 1916.

Action for breach of contract. Before Judge Ellis. Fulton superior court. May 31, 1915.

*E. A. Neely*, for plaintiff. *George Gordon*, for defendants.

Hill, J. The Knox Realty Company executed to Virgil M. Alverson and Charles B. Alverson, their heirs and assigns, a bond for title dated April 10, 1913, whereby, for a certain consideration of $17000 ($7000 in cash and the remainder in notes falling due in 1914, 1915, and 1916, respectively), it was obligated, upon payment of the notes, to execute to the obligees good and sufficient title to a certain tract or parcel of land fronting 55 feet on Whitehall street, Atlanta, with an accurate description as to the other sides of the lot. On May 12, 1913, the obligees, for a valuable

consideration, transferred the bond for title and sold the lot of land as described to J. B. Chamlee, his heirs and assigns, and authorized the Knox Realty Company to make to him, his heirs and assigns, a deed according to the terms of the bond for title, on his or their compliance with the terms and conditions of the bond. On May 12, 1914, J. B. Chamlee entered into an agreement to sell the property to S. Alex Smith for a named consideration, "relying upon the contract and the bond for title of the defendants," and agreed to deliver the 55 feet frontage on Whitehall street. Upon measuring the property Smith discovered that it only measured 53.9 feet, and Chamlee was forced to reduce the price pro tanto, which resulted in loss to him. He thereupon brought suit against the Alversons, declaring in two counts substantially as follows: The first count set out a contract with the defendants, by which they agreed to sell the plaintiff the lot of land in the city of Atlanta, fronting 55 feet on Whitehall street and extending back with equal width 164 feet by 188 in depth, "at $360 per front foot for Whitehall St. measurement." Defendants represented that the property was 55 feet in width fronting on Whitehall street. Plaintiff relied on this representation and purchased the property, taking a transfer of a bond for titles to the property held by the defendants; and on measuring the property it was ascertained that it measured only 53.9 feet, and plaintiff was forced to reduce the price pro tanto at which he had sold it to another, which resulted in a loss to him of $600.10, based upon the selling price. The second count was substantially the same as the first, but the measure of damages was placed at $396, being the value of the difference in shortage based upon the contract price of $360 per front foot, at which rate the defendants had agreed to sell the land to the plaintiff. The defendants filed their demurrer to the declaration, which was sustained, and the plaintiff excepted.

1. It is insisted by the plaintiff, that, upon his failure to receive 55 feet Whitehall street frontage, there was a breach of the contract of sale on the part of the defendants, and that he had a right to recover of them for the shortage. On the other hand the trial court, in sustaining the demurrer, evidently based his decision on the principle that the contract of sale was consummated by the formal transfer of the bond for titles from the defendants to the plaintiff, which the latter accepted, and the sale then became ext-

cuted and was merged into the transfer, and was fully performed. The transfer was executed with all the formality of a deed, under the hand and seal of the parties, and transferred to the plaintiff whatever right and title they possessed. Whether the plaintiff, if he complied with the conditions of the bond and demanded of the obligor that it comply with its obligations, could, on refusal, sue on the bond and recover, need not be decided. We think the court below was right in sustaining the demurrer. By the transfer of the bond for title we think the sale contract became merged therein, and the defendants' liability to the plaintiff under the contract of sale was at an end. In *Nelson* v. *Atlanta &c. Ry. Co.,* 135 *Ga.* 572 (69 S. E. 1118), it was said: "A railroad company made to an owner of land lying near tracks used by it a written proposition to purchase a strip of such land 'on the following terms, covenants, and conditions,' setting out that the strip was to be used, in connection with other property, in a general plan for railroad terminals, and agreements as to erecting a wall, moving a public street, not using certain land for stated purposes, etc. It provided: 'the covenants and agreements herein stated to be incorporated in the deed to said property, so as to run with the land sold.' The proposition was accepted in writing. Later the purchaser assigned its rights to another company, and the seller, on receipt of the purchase-price, made to such assignee a deed in which were included the covenants and agreements of the contract. *Held,* that the contract was merged into the deed, and could not thereafter be enforced against the original purchaser as containing personal covenants." And in *Augusta Land Co.* v. *Augusta Ry. &c. Co.,* 140 *Ga.* 519 (79 S. E. 138), it was held: "Where a written agreement was entered into between two corporations, whereby one was to execute a deed to the other upon certain conditions, and subsequently a deed in fee simple to the land referred to in the agreement was executed, reciting in the preamble thereof that whereas by agreement between the parties the grantor agreed to convey to the grantee certain land on 'certain conditions which have since been complied with,' but the habendum clause of the deed contained no such conditions, the conditions of the agreement were merged in the conveyance, and the grantee . . held the land freed from the conditions contained in the agreement." The principles decided in these cases with respect to the doctrine of merger

are controlling in the instant case. As the law of merger is elaborately discussed in those cases, we will not enlarge on it here.

*Judgment affirmed. All the Justices concur.*