## McCULLOUGH BROTHERS *v.* ARMSTRONG.

1. In a suit for the purchase-price of goods, where the documentary evidence constitutes a clear and unambiguous contract of purchase and sale, it is not error for the court to so instruct the jury.
2. In the absence of an agreement to the contrary, delivery to a carrier of goods ordered by a purchaser living in a distant city is delivery to the purchaser ; and the seller is not liable for any damage to the goods after they have been so delivered to the carrier.

Submitted June 29, — Decided August 12, 1903.

Complaint.    Before Judge Reid.    City court of Atlanta.    October 25, 1902.

*R. J. Jordan*, for plaintiffs in error.    *Dorsey, Brewster & Howell, H. M. Dorsey*, and *J. D. Bradwell*, contra.

CANDLER, J.    The plaintiff below, a resident of Florida, sued McCullough Brothers, a firm doing business in Atlanta, for the price of a car-load of cabbage.    Certain correspondence between the parties was introduced in evidence as forming a contract upon which the suit was based.    It is inferable from the record, that, prior to the time the correspondence contained therein began, negotiations had been pending between the parties for the sale by the plaintiff to the defendants of a car-load of cabbage.    The first letter, in

point of date, which was introduced was from Armstrong to Mc-Cullough Brothers, was dated Tampa, Fla., April 20, 1900, and was as follows: "Did not get message in time for this car cab., so have let another party have it. Very few left now, and demand very active. Will get out car last this coming week. Got some nice small hard cabbage, easily net 100 lbs. average to crate. Hoping to do some business with you," etc. To this McCullough Brothers replied in a letter dated April 21st, 1900, as follows: "Your favor of 20th received, and in reply beg to say we are very much surprised at contents of same, in reference to you saying you did not receive our wire in time to accept our offer, as we sent it in 15 minutes after we received yours. On receipt of this letter, wire us what you will take for the car of cabbage you will have ready for shipment the latter part of the coming week, and do not sell it until you have heard whether we will take it or not. We will have our bank guarantee payment of draft, as per your letter. Trusting to hear from you promptly," etc. On April 26, Armstrong telegraphed McCullough Brothers as follows: "Car cabbage to-morrow two twenty-five billing draft attached here." McCullough Brothers replied by telegraph on the same day: "Will take car ship sight draft bill lading attached wire car number." Upon the arrival of the car in Atlanta, McCullough Brothers telegraphed Armstrong on April 30 as follows: "Car cabbage arrived all vents closed show decay. Not hearing from you last wire bought elsewhere. Will use two dollars help you out. Be quick must be sold [at] once." On the following day, May 1, they again telegraphed him, their message being in the following words: "Since examining cabbage carefully this morning find in each end car very bad withdraw our offer. Handle your account think can net two dollars. Should be sold to-day final. Do as you please." It was explained that the words "two twenty-five" in Armstrong's telegram of April 26 meant that the price at which the cabbage were offered to McCullough Brothers was two dollars and twenty-five cents per crate. The jury found for the plaintiff the full amount sued for, with interest. The defendants' motion for a new trial was overruled, and they excepted. Aside from the general grounds, the motion complained of portions of the judge's charge to the effect that the correspondence between the parties (which has been set out above) constituted a contract for the purchase and sale of

the cabbage; that, in the absence of an agreement to the contrary, delivery by the plaintiff to the carrier at the point of shipment was delivery to the defendant; and that if the jury should find that the plaintiff delivered to the carrier, in Florida, goods of the character set out in the contract between the parties, reasonably merchantable and suitable for the use intended, they should find for the plaintiff. The error alleged is that the court expressed an opinion as to what constituted the contract, and "misstated the rule of law applicable to the facts, the evidence being . . that the plaintiff retained title to the goods shipped."

We find no error in the portions of the charge of which complaint was made. Plainly the letters and telegrams introduced in evidence constituted an unambiguous contract of purchase and sale, and it was not only the right, but the duty of the court to construe that contract, in order that the jury might pass intelligently upon the issues presented for their determination. It is equally clear that the court did not err in charging the jury that, in the absence of an agreement to the contrary, delivery by the plaintiff to the carrier in Florida was delivery to the defendants. *Mann* v. *Glauber*, 96 *Ga.* 795, and cases cited. In the brief of counsel for the plaintiffs in error, however, it is urged that Armstrong did not part with the title to the goods, because they were shipped with a draft attached to the bill of lading, showing that it was not intended that they should be delivered to McCullough Brothers until the draft was paid. As to this the record is by no means clear. In the letter from McCullough Brothers to the plaintiff, they say: "We will have our bank guarantee payment of draft, as per your letter," while in one of their telegrams they direct that the goods be shipped, "sight draft bill lading attached." There is nothing in the evidence to indicate what the intention of the plaintiff was in shipping the goods, but it is recited in the order passed by the court that "the bill of lading was made to the order of the defendants." That being the case, and there being an entire lack of evidence to show any agreement between the parties that title was to be retained in the plaintiff after the goods were turned over to the carrier, the instructions given by the court on this subject were clearly correct. In this view of the case, the sole issue to be determined by the jury was whether the goods, when delivered to the carrier, came up to the stipulations of the contract between the parties.

As to this there was no conflict in the evidence. The plaintiff, who was present when the cabbage were packed, immediately prior to being loaded, made out his case completely as to the condition of the goods, and the defendants were not in a position to contradict his testimony. The verdict of the jury, therefore, was amply warranted, if not demanded, by the evidence, and there was no error in overruling the motion for a new trial.

*Judgment affirmed.  By five Justices.*